United States District Court
Eastern District of New York

-----------------------------------X

Harlene Harroo-Lavine and Pearson
Lavine,

      **Order**

   *Plaintiffs*,

      No. 25-cv-1235 (KAM)(CHK)

 - against -

PHH Mortgage Corporation,

   *Defendant*.

-----------------------------------X

**Kiyo A. Matsumoto, United States District Judge:**

Pending before the Court is a motion to dismiss filed by defendant PHH Mortgage Corporation ("PHH" or "Defendant"), (ECF No. 18[1]), seeking dismissal of the amended complaint, (ECF No. 15, Amended Complaint ("Am. Comp.")), filed by plaintiffs Harlene Harroo-Lavine and Pearson Lavine ("Plaintiffs"). This dispute arises from a 2006 mortgage loan securing a note signed by Harlene Harroo-Lavine, and loan modifications that occurred in 2011 and 2016, the validity of which Plaintiffs now dispute. Plaintiffs assert eight claims for violations of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601, *et seq.*, and its implementing Regulation X, 12 C.F.R. § 1024.1, *et seq.*; the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601, *et seq.*, and its

---

[1] Pincites in this Memorandum and Order refer to the page number generated by CM/ECF.

implementing Regulation Z, 12 C.F.R. § 1026.1, *et seq.*; the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.*; New York General Business Law ("GBL") § 349; and various provisions of the New York Banking Law ("NYBL").

For the reasons explained below, Plaintiffs' federal claims (Claims One, Two, and Three) are DISMISSED WITH PREJUDICE. The Court DECLINES TO EXERCISE SUPPLEMENTAL JURISDICTION over Plaintiffs' state claims (Claims Four, Five, Six, Seven, and Eight) and DISMISSES the state claims without prejudice.

## BACKGROUND

### I.   Factual Background

A. Execution of Note and Mortgage

On June 26, 2006, Plaintiff Harlene Harroo-Lavine executed an adjustable-rate note for the property located at 1383 East 48th Street, Brooklyn, NY ("the Property") in the amount of $492,500.00 in favor of Fremont Investment & Loan ("Fremont"). (ECF No. 15 ("Am. Compl.") ¶ 14); (ECF No. 15-1 ("Note").) On that same day, Ms. Harroo-Lavine and Plaintiff Pearson Lavine executed a mortgage, as joint tenants with a Right of Survivorship, to secure the note on the Property.[2] (Am. Compl. ¶ 15); (ECF No. 15-2 ("Mortg.").) The mortgage was duly recorded as a lien against the Property on July 27, 2006. (Am. Compl. ¶ 16); (Mortg. at 27.)

---

[2] Ms. Harroo-Lavine executed both documents under the name Harlene Harvey. (Note at 5); (Mortg. at 18.)

B. Transfer to Litton and First Loan Modification

On June 8, 2008, Fremont transferred the note and mortgage to Litton Loan Servicing, LP ("Litton").  (Am. Compl. ¶ 16); (ECF No. 15-3 ("Litton Servicing Transfer Notice").)  The mortgage entered default in July 2008 and remained in default through July 2011. (Am. Compl. ¶ 41.)  On July 13, 2011, Plaintiffs and Litton executed a Modification Agreement, which became effective on July 15, 2011.  (Am. Compl. ¶ 17); (ECF No. 15-6 ("First Loan Modification") at 2-3, 9.)  Plaintiffs' principal balance increased from the premodification amount of $488,647.57 to a new modified amount of $621,713.71, representing a recapitalization of $133,066.14.  (Am. Compl. ¶¶ 17-18); (First Loan Modification at 2-3.)  The Modification Agreement deferred $114,767.38 of the new modified unpaid principal balance, which would become due at the mortgage's new maturity date of October 1, 2036.  (Am. Compl. ¶ 19); (First Loan Modification at 4-6.)  Plaintiffs allege that Litton failed to provide the disclosures required by TILA, and that they continue to experience harm from the lack of required disclosures through the interest charged on an allegedly "inflated" new modified unpaid principal balance.  (Am. Compl. ¶¶ 21-22.)

C. Transfer to Ocwen and Second Loan Modification

On October 14, 2011, Litton notified Plaintiffs that their mortgage would be transferred, effective November 1, 2011, to Ocwen

Loan Servicing, LLC ("Ocwen").  (Am. Compl. ¶ 16); (ECF No. 15-4 ("Ocwen Servicing Transfer Notice").)  On November 20, 2016, Plaintiffs and Ocwen executed a Modification Agreement.  (Am. Compl. ¶ 23); (ECF No. 15-7 ("Second Loan Modification").)  The Second Loan Modification capitalized $152,650.37, creating a new modified unpaid principal balance of $576,650.37 effective on January 1, 2017.  (Am. Compl. ¶¶ 23-24); (Second Loan Modification at 5.)  The Second Loan Modification also created a deferred balance of $152,650.37. (Am. Compl ¶ 25); (Second Loan Modification at 5.) Plaintiffs' mortgage received a new maturity date of October 1, 2036.  (Second Loan Modification at 5.)  Plaintiffs allege that Ocwen failed to provide them with the proper TILA disclosures and that the improper fees charged for the modification in combination with the modified interest rate of 3% rendered the modified mortgage as a "high-cost mortgage" under TILA, a "high-cost home loan" under New York Banking Law § 6-l, and a "subprime home loan" under New York Banking Law § 6-m.  (Am. Compl. ¶ 28.)

D. <u>Transfer to and Servicing by PHH</u>

On June 5, 2019, PHH notified Plaintiffs that Ocwen transferred the note and mortgage to PHH for loan servicing effective June 1, 2019.  (Am. Compl. ¶¶ 16, 30); (ECF No. 15-4 ("PHH Transfer Notice").)[3]  An addendum to the transfer notice

---

[3] The mortgage was transferred to PHH, because, on June 1, 2019, Ocwen and PHH merged with PHH emerging as the surviving entity.  (ECF No. 18-4 ("Feezer Decl.") ¶ 11.)

informed Plaintiffs of their unpaid principal balance and their anticipated negative escrow balance as of June 1, 2019. (Am. Compl. ¶ 31); (PHH Transfer Notice at 5.) On July 2, 2024, Plaintiffs' counsel mailed a qualified written request ("QWR") to PHH seeking specific documents to provide, among other information, "a complete life-of-loan transaction history, an itemization and explanation of all fees, charges, and corporate advances assessed to the account, details of all escrow transactions and analyses since origination, and information pertaining to the calculation of interest and principal balances[.]" (Am. Compl. ¶ 47); (ECF No. 15-8 ("QWR").) On August 1, 2024, PHH acknowledged receipt of Plaintiffs' QWR, and, on August 6, 2024, Plaintiffs' counsel received PHH's response to the QWR. (Am. Compl. ¶¶ 48-49.); (ECF No. 15-9 ("PHH's Acknowledgement Ltr.").); (ECF No. 15-10 ("PHH QWR Resp.").)

Upon receiving and assessing PHH's QWR response, Plaintiffs' noticed several alleged servicing errors. On June 4, 2019, PHH processed a "Non-Cash-Adjustment," adding $152,650.37 to Plaintiffs' unpaid principal balance. (Am. Compl. ¶ 36.); (ECF No. 15-11 ("Payment Histories") at 17, 23.) In this way, Plaintiffs allege that PHH adopted and ratified Ocwen's "illegally inflated principal balance." (Am. Compl. ¶ 37.) Plaintiffs then allege that Ocwen's subsequent mortgage statements constituted "new and ongoing" injuries. (Am. Compl. ¶ 38.) PHH also provided

5

Plaintiffs with the annual escrow account statements for 2019, 2020, 2021, 2022, and 2023 but did not provide any annual escrow account statements for the years before 2019. (Am. Compl. ¶ 39); (ECF No. 15-12 ("Escrow Statements").) Plaintiffs further allege that the payment histories contained inaccurate information and that PHH failed to correct escrow charges that prior servicers misapplied. (Am. Compl. ¶¶ 40-43.)

## II.  Procedural Background

Plaintiffs filed a complaint commencing this action on March 4, 2025. (ECF No. 1.) The Court held a pre-motion conference on May 16, 2025, and, without objection from PHH, granted Plaintiffs' request to file an amended complaint. (Minute Entry dated 05/16/2025.) On June 11, 2025, Plaintiffs filed their amended complaint, which is the operative complaint, alleging eight claims that are listed in the chart below. (Am. Compl.) The parties filed a fully briefed motion to dismiss the amended complaint on August 7, 2025. (ECF Nos. 18-20.)

## III. Summary of Claims

The table below summarizes Plaintiffs' claims in the operative amended complaint:

|  | Type of Claim |
|---|---|
| **Claim One** | RESPA (Federal) |
| **Claim Two** | TILA (Federal) |

| **Claim Three** | FDCPA<br>(Federal) |
|---|---|
| **Claim Four** | GBL § 349<br>(State) |
| **Claim Five** | NYBL § 6-k<br>(State) |
| **Claim Six** | NYBL § 6-l<br>(State) |
| **Claim Seven** | NYBL § 6-m<br>(State) |
| **Claim Eight** | Accounting<br>(State) |

(*See* Am. Comp. ¶¶ 59-128.)

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Cardinal Motors, Inc. v. H&H Sports Prot. USA Inc.*, 128 F.4th 112, 120 (2d Cir. 2025) (quoting *Int'l Code Council, Inc. v. UpCodes Inc.*, 43 F.4th 46, 53 (2d Cir. 2022)) (internal quotations omitted). In assessing whether Plaintiff's allegations meet this standard, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation," and "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Buon v. Spindler*, 65 F.4th 64, 76 (2d Cir. 2023) (alteration adopted) (first quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); and then quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Dismissal under Rule 12(b)(6) is appropriate when a defendant raises lack of timeliness as an

affirmative defense and it is clear from the face of the complaint that the plaintiff's claims are barred as a matter of law." *Moreira v. Societe Generale, S.A.*, 125 F.4th 371, 387 n.12 (2d Cir. 2025) (citation modified).

## **DISCUSSION**

As discussed below, Plaintiffs' attempt to challenge the validity of the 2011 and 2016 loan modifications through assertions of various federal claims (under RESPA, TILA, and FDCPA) nearly a decade later is unavailing.  As explained below, the Court first reviews the viability of the federal claims asserted and then, upon finding that no federal claim survives dismissal, declines supplemental jurisdiction over Plaintiffs' state claims.

## I.    **RESPA Claim (Claim One)**

Congress enacted RESPA "to insure that consumers throughout the Nation are provided with greater and more timely information on the nature and costs of the settlement process and are protected from unnecessarily high settlement charges caused by certain abusive practices[.]" 12 U.S.C. § 2601(a).  Congress amended RESPA in 2010 through the Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub. L. No. 111-203, 124 Stat. 1376 (2010), and "addressed the duties of servicers of federally related mortgage loans with regard to responding to borrower requests for information or assertion of error." *Sutton v. CitiMortgage, Inc.*, 228 F. Supp. 3d 254, 260 (S.D.N.Y. 2017).  The Dodd-Frank Act also

created the Consumer Financial Protection Bureau and empowered the CFPB to promulgate rules and regulations to implement RESPA. *Naimoli v. Ocwen Loan Servicing, LLC*, 22 F.4th 376, 381 (2d Cir. 2022). The CFPB duly promulgated Regulation X, which went into effect in January 2014, to "allow[] borrowers to notify mortgage servicers of possible account errors." *Id.* (quoting 12 C.F.R. § 1024.35).

"As a practical matter, the typical point of contact for a borrower is the servicer of the loan or mortgage." *Sutton*, 228 F. Supp. 3d at 261. Thus, when a loan servicer receives a QWR from a borrower, the loan servicer must "conduct an investigation, make appropriate corrections in the account of the borrower, and provide a written explanation about why the servicer believes the account of the borrower is correct or why the information requested is unavailable." *Murray v. Newrez LLC*, No. 24-CV-6160 (ARR), 2025 WL 1158090, at *4 (E.D.N.Y. Apr. 21, 2025) (citing 12 U.S.C. § 2605(e)(2); *see also Izmirligil v. Select Portfolio Servicing, Inc.*, No. 18-CV-7043 (PKC) (LB), 2020 WL 1941319, at *6 (E.D.N.Y. Apr. 22, 2020) (noting the time requirements for a loan servicer to acknowledge receipt of a QWR and then take action.). The loan servicer, in response to the QWR, must "'make appropriate corrections in the account of the borrower,' provide a statement of reasons why the servicer believes the borrower's account to be correct, and either 'furnish information requested by the borrower

9

or an explanation of why the information requested is unavailable.'" *Bocci v. Nationstar Mortgage LLC*, No. 23 Civ. 1780 (JPC) (KHP), 2024 WL 4326932, at *6 (S.D.N.Y. Sept. 27, 2024) (quoting 12 U.S.C. § 2605(e)(2)).

If the loan servicer fails to comply with a provision of Section 2605, RESPA provides borrowers with a private right of action. *Murray*, 2025 WL 1158090, at *5 (citing 12 U.S.C. § 2605(f)). To assert a claim under Section 2605, a plaintiff must adequately allege either (1) actual damages that were proximately caused by the loan servicer's failure to adhere to Section 2605 or (2) statutory damages based on a pattern or practice of noncompliance with Section 2605. 12 U.S.C. § 2605(f)(1)(A)—(B). RESPA imposes a statute of limitations of three years for violations of Section 2605. 12 U.S.C. § 2614.

Plaintiffs' RESPA claims based on the improper administration of escrow accounts and improper imposition of force-placed insurance are time-barred, (Am. Compl. ¶¶ 42, 65, 67), as these alleged violations occurred before March 4, 2022. Only Plaintiffs' allegation that PHH failed to adequately respond to their QWR is timely because the QWR was mailed in July 2024, but, as explained below, the QWR is not actionable because Plaintiffs only allege harms from the 2011 and 2016 modifications, not from PHH's QWR response.

Plaintiffs' QWR fails to plausibly allege actual damages or

10

statutory damages. Instead of alleging actual damages arising from PHH's 144-page QWR response, (ECF No. 18-7 ("PHH Resp. Ltr.")), Plaintiffs point to a cascade of monetary and emotional harms caused by allegedly illegal loan modifications from 2011 and 2016, (Am. Compl. ¶ 56), harms which pre-dated the 2024 QWR and are untimely.  Indeed, Plaintiffs concede that, "[a]t the heart of this dispute are two loan modifications, one in 2011 by Litton and another in 2016 by Ocwen, during which Plaintiffs' mortgage loan principal balance was improperly and unlawfully inflated by the capitalization of substantial, unsubstantiated, and/or illegal fees, interest, and expenses." (*Id.* ¶ 2.)  Courts, however, have long held that a QWR must relate to loan servicing, not loan modifications.  *Murray*, 2025 WL 1158090, at *7 (E.D.N.Y. Apr. 21, 2025) (collecting cases); *see also Tanasi v. CitiMortgage, Inc.*, 257 F. Supp. 3d 232, 265 (D. Conn. 2017) ("RESPA's definition of servicing narrowly focuses on the exchange of 'payments' between a servicer and a borrower.") (citing 12 U.S.C. § 2605(i)(3)).

Further, to state a pattern or practice for statutory damages, a plaintiff must show that the loan servicer's alleged violations are part of "a standard or routine way of operating." *Sutton*, 228 F. Supp. 3d at 264-65 (quoting *Gorbaty v. Wells Fargo Bank, N.A.*, 2012 WL 1372260, at *5 (E.D.N.Y. Apr. 18, 2012)).  One or two RESPA violations will not suffice to constitute a standard or routine way of operating. *Id.* at 265 (collecting cases).  Here, Plaintiffs

11

only allege an insufficient response to one QWR. Plaintiffs, therefore, fall short of plausibly alleging statutory damages. *See Jackson v. Caliber Home Loans*, No. 18-CV-4282 (NG) (CLP), 2019 WL 3426240, at *9–10 (E.D.N.Y. July 30, 2019) (finding that five purported violations resulting from two QWRs are not properly counted as five separate incidents for purposes of statutory damages, so the plaintiff failed to show a pattern or practice of RESPA violations.).

Lastly, Plaintiffs' continuing violations doctrine argument is misplaced. The continuing violations doctrine applies to a policy or pattern of unlawful behavior—such as a hostile work environment claim—but not to "discrete acts." *King v. Aramark Services Inc.*, 96 F.4th 546, 559–60 (2d Cir. 2024). PHH's mailing of an allegedly inaccurate mortgage statement is a discrete act, as Plaintiffs themselves describe in their memorandum of law. (ECF No. 19 ("Pls' Mem. of Law in Opp'n") at 16 ("each instance in which PHH charges interest on unlawfully capitalized sums, is a new, *discrete* violation…"); *See Doody v. Seterus, Inc.*, No. 3:19-CV-1191 (RNC), 2022 WL 993579, at *5 (D. Conn. Apr. 1, 2022) ("The [continuing violation] doctrine does not apply to discrete unlawful acts, such as the transmission of a false mortgage statement, even when those acts are part of serial violations.") (citing *Washington v. County of Rockland*, 373 F.3d 310, 318 (2d Cir. 2004)). Plaintiffs, therefore, do not plausibly state a RESPA

12

violation based on a continuing violation theory.

PHH's motion to dismiss Plaintiffs' RESPA claim is granted, and Plaintiffs' RESPA claim is dismissed with prejudice. Dismissal with prejudice is warranted because "[t]his is [Plaintiffs'] second attempt to craft a viable complaint, and its shortcomings are of the sort that cannot be remedied by amendment." *Konowaloff v. Metro. Museum of Art*, No. 10 CIV. 9126 SAS, 2011 WL 4430856, at *8 (S.D.N.Y. Sept. 22, 2011), *aff'd*, 702 F.3d 140 (2d Cir. 2012).

## II.   TILA Claim (Claim Two)

Plaintiffs' TILA claim is time-barred. "[A] suit for damages under TILA, in connection with a mortgage loan, may not be brought more than one year after entering into that loan." *Latouche v. Wells Fargo Home Mortg. Inc.*, 752 F. App'x 11, 13 (2d Cir. 2018) (summary order). Neither the continuing violation doctrine nor equitable tolling applies to Plaintiffs' TILA claim. *See id*. at n.1 ("District courts in this circuit have held that the continuing violation doctrine does not apply to TILA claims."); *id*. at 13 ("To qualify for equitable tolling, a plaintiff must show that some extraordinary circumstance, such as fraudulent concealment of the cause of action, stood in the way of bringing suit and that she had been pursuing her rights diligently." (citation omitted)). Indeed, "equitable tolling will not be applied unless the plaintiff alleges affirmative acts of concealment by the defendant over and above any alleged non-disclosure that forms the basis of his or

13

her claims." *Kremenchutsky v. Citizens Bank N.A.*, No. 24-CV-01615 (NCM) (LKE), 2025 WL 1249623, at *4 (E.D.N.Y. Apr. 30, 2025) (quoting *Futterman v. Wash. Mut. Bank, FA*, No. 10-CV-01002, 2010 WL 5067650, at *2 (N.D.N.Y. Dec. 6, 2010)).  Plaintiffs have not alleged any affirmative acts of concealment, only non-disclosure.

Given the nearly decade-long delay between the November 20, 2016 loan modification and the commencement of this March 4, 2025 action, as well as Plaintiffs' unsupported, conclusory allegations that they "pursu[ed] [their] rights diligently" and were the victims of "fraudulent concealment," Plaintiffs fail to plausibly allege some "extraordinary circumstances" that would entitle them to equitable tolling.  (Am. Compl. ¶ 80.); *Latouche*, 752 F.App'x at 13.  As stated earlier, Plaintiffs allege only discrete harms from PHH and fail to allege facts supporting fraudulent concealment or a continuing violation.  Accordingly, Plaintiffs' TILA claim (Claim Two) is dismissed with prejudice as time-barred.

## III. FDCPA claim (Claim Three)

"Congress enacted the FDCPA to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." *DeSimone v. Select Portfolio Servicing, Inc.*, 748 F. Supp. 3d 136, 157 (E.D.N.Y. 2024) (quoting *Vincent v. The*

14

*Money Store*, 736 F.3d 88, 96 (2d Cir. 2013)) (internal quotation marks omitted). "The FDCPA creates a private right of action for debtors who have been harmed by abusive debt collection practices." *Id*. (quoting *Benzemann v. Citibank N.A.*, 806 F.3d 98, 100 (2d Cir. 2015)). Moreover, "[t]he FDCPA is remedial in nature, so its terms must be construed in a liberal fashion if the underlying Congressional purpose is to be effectuated." *Izmirligil*, 2020 WL 1941319, at *9 (quoting *Vincent*, 736 F.3d at 98) (citation modified).

When analyzing a "representation or means in connection with the collection of any debt," courts must apply the perspective of the "least sophisticated consumer." 15 U.S.C. § 1692e; *Arias v. Gutman, Mintz, Baker & Sonnenfeldt LLP*, 875 F.3d 128, 135 (2d Cir. 2017) (quoting *Easterling v. Collecto, Inc.*, 692 F.3d 229, 233 (2d Cir. 2012)). "To establish a violation under the FDCPA, three elements must be proven: (1) the plaintiff must be a 'consumer' who allegedly owes the debt or a person who has been the object of efforts to collect a consumer debt, (2) the defendant collecting the debt must be considered a 'debt collector,' and (3) the defendant must have engaged in an act or omission in violation of the FDCPA's requirements." *Gabriel v. TransUnion LLC*, No. 22-CV-2216 (PKC) (MMH), 2024 WL 2022261, at *3 (E.D.N.Y. May 7, 2024) (quoting *Skvarla v. MRS BPO, LLC*, No. 21-CV-55 (ER), 2021 WL 2941118, at *2 (S.D.N.Y. July 12, 2021)).

15

Despite the Court's liberal reading of the amended complaint under the FDCPA, Plaintiffs' FDCPA claim falls short for three reasons. *First*, Plaintiffs' FDCPA claim is time-barred. Plaintiffs allege that a notice dated June 5, 2019, notifying Plaintiff Harroo-Lavine of the merger of her then existing loan servicer, Ocwen, with PHH, constituted an FDCPA violation because it included boilerplate debt collection language and allegedly misrepresented the debt amount. (Am. Comp. ¶¶ 84-86.) Plaintiffs, however, do not explain how the 2019 notice is actionable given the one-year statute of limitations for FDCPA violations under 15 U.S.C. § 1692k(d), and, given that Plaintiffs have raised no coherent argument supporting an extraordinary remedy like equitable tolling. Therefore, the 2019 notice cannot serve as a basis for Plaintiffs' FDCPA claim in an action untimely commenced in 2025.

*Second*, Plaintiffs point to unspecified violations of the FDCPA that allegedly occurred more recently but fail to provide any specific documents or dates pertaining to the alleged FDCPA violations. Instead, in conclusory fashion, Plaintiffs allege that "FDCPA violations by PHH have occurred through mortgage statements and other communications sent to Plaintiffs within one year prior to the filing of the original complaint (March 4, 2025) and continuing to date." (Am. Comp. ¶ 87.) Left with an absence of specific actionable communications, the Court finds that

16

Plaintiffs' allegations for Claim Three are too vague or speculative to plausibly allege an FDCPA violation.

*Third*, Plaintiffs fail to allege or argue that PHH was a "debt collector" within the meaning of the FDCPA. "[T]he FDCPA ... only applies to statutorily defined 'debt collectors.'" *Qurashi v. Ocwen Loan Servicing, LLC*, 760 F. App'x 66, 68 (2d Cir. 2019) (quoting 15 U.S.C. § 1692a(6)). "The FDCPA excludes from this definition of debt collector 'any person collecting or attempting to collect any debt owed ... or due another to the extent such activity ... concerns a debt which was not in default at the time it was obtained by such person.'" *Id*. (quoting 15 U.S.C. § 1692a(6)(F)). Critically, Plaintiffs must, but cannot, allege that the debt was "in default at the time it was obtained by [Defendant]." *Id*.

In 2019, PHH sent Harroo-Lavine a notice that does not state that the loan is in default. Instead, the notice states the following:

> Ocwen Loan Servicing has joined forces with PHH Mortgage Services ... As a result, we will be consolidating all mortgage accounts into one company, PHH Mortgage Services ("PHH").

> Effective 6/1/2019, PHH became the new servicer for this account and will be collecting the mortgage payments going forward.

(ECF No. 15-5, Am. Comp. Ex. 5 ("PHH Transfer Notice"), at 2.) "[B]ased on the June 2019 merger of PHH and Ocwen, PHH stands in

17

the shoes of Ocwen." *Mathieson v. Wells Fargo Bank, N.A.*, No. 8:20-CV-2728 (WFJ) (SPF), 2021 WL 4078140, at *9 (M.D. Fla. Sept. 8, 2021). Plaintiffs also allege that PHH was a debt collector because Plaintiffs had an escrow account shortage when PHH received the mortgage from Ocwen. (Am. Compl. ¶¶ 32, 84(b).) PHH, however, correctly distinguishes that the June 28, 2019 escrow statement noted an *anticipated* escrow shortage and then provided Plaintiffs with two options to address the anticipated shortage. (ECF No. 18-1 ("PHH Mem. of Law") at 31 n.16); (Escrow Statements at 2.)

Lastly, Plaintiffs allege that PHH is a "debt collector" because it identified itself as such in its transfer notice.[4] (Am. Compl. ¶ 84(a)); (PHH Transfer Notice at 2.) Plaintiffs also cite two Second Circuit cases to support the proposition that the inclusion of the debt collector language, also known as a "mini-*Miranda* warning," in a notice to a consumer subjects the loan servicer to "debt collector" status "regardless of the loan's actual status or the entity's subjective intent." (ECF No. 19 ("Pls.' Mem of Law") at 25) (citing *Hart v. FCI Lender Services, Inc.*, 797 F.3d 219, 225–26 (2d Cir. 2015) and *Alibrandi v. Fin. Outsourcing Services, Inc.*, 333 F.3d 82 (2d Cir. 2003)). Plaintiffs

---

[4] The notice states, "[t]his communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is provided purely for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally." (PHH Transfer Notice at 2.)

are mistaken. In fact, *Alibrandi* confirms that a court must primarily look to the status of the loan to determine if the loan servicer is a "debt collector." *Alibrandi*, 333 F.3d at 86 ("Thus, under § 1692a(6)(F)(iii), the classification of debt collector depends upon the status of a debt, rather than the type of collection activities used.").

PHH's June 5, 2019 notice did not deem the mortgage to be in default. Moreover, PHH's August 6, 2024 QWR response noted that "the account has always been current and in good standing since the time [PHH] acquired the servicing of the account until present." (PHH Transfer Notice at 2); (PHH QWR Resp. at 3.) Thus, the Court need not accept as true a complaint's allegations that are contradicted by documents attached to the operative complaint. *Cerco Bridge Loans 6 LLC v. Schenker*, 768 F. Supp. 3d 559, 571 (S.D.N.Y. 2025) (citing *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 146–47 (2d Cir. 2011). "The document controls[.]" *Id.*

*Hart* is also distinguishable. In that case, the Plaintiff-Appellee was in default when the loan servicer, FCI, took on loan servicing responsibilities. *Hart*, 797 F.3d at 221. FCI also conceded to being a "debt collector" under the FDCPA for purposes of that appeal. *Id.* at 224. The case did not turn on whether FCI was a debt collector but whether a communication from FCI fell within the "in connection with the collection of any debt"

19

language.  *Id.*  Of the district court cases cited by both parties, the Court finds *Smith v. Bendett & McHugh, P.C.* to be the most persuasive.  *See* No. 3:22-CV-00239 (JAM), 2024 WL 1117002, at *6-7 (D. Conn. Mar. 13, 2024) ("courts have repeatedly rejected the notion that the Mini Miranda warning is enough to implicate the protections of the FDCPA.").

Further, the loan was not in default, and Plaintiffs do not allege that it was prior to, or during, the time that PHH became the servicer.  The statutory language of 15 U.S.C. § 1692a(6)(F) explicitly excludes from the definition of debt collector any person collecting or attempting to collect "a debt which was not in default at the time it was obtained by such person."  15 U.S.C. § 1692a(6)(F).  In short, the mini-*Miranda* warning in PHH's transfer notice cannot override the clear language of 15 U.S.C. § 1692a(6)(F) and the documents attached to Plaintiffs' amended complaint.  Plaintiffs, therefore, fail to allege, with adequate factual support, whether Plaintiffs were in default when Ocwen or PHH obtained the alleged debt, which is a predicate for Defendant qualifying as a "debt collector" under the FDCPA.  *Qurashi*, 760 F.App'x. at 68.

In sum, Plaintiffs fail to allege specific facts that could support findings that (i) there was an FDCPA violation within one year preceding the commencement of this action; and (ii) PHH was a "debt collector" under the FDCPA, a required element of an FDCPA

claim.  *See Okyere v. Palisades Collection, LLC*, 961 F. Supp. 2d 508, 514 (S.D.N.Y. 2013) (holding that it is an element of an FDCPA violation that the defendant collecting the debt is considered a "debt collector" under the FDCPA).  Because Plaintiffs' pleading defects with respect to this claim appear insurmountable, further amendment would be futile.  Accordingly, Plaintiffs' FDCPA claim (Claim Three) is dismissed with prejudice.

## IV.  State Claims

Pursuant to the Second Circuit's guidance, the Court declines to exercise supplemental jurisdiction over Plaintiff's claims under New York state law, and they are dismissed without prejudice. (Claims Four, Five, Six, Seven, and Eight).  *See Oneida Indian Nation of New York v. Madison County*, 665 F.3d 408, 437 (2d Cir. 2011) ("Although the decision whether to decline to exercise supplemental jurisdiction is purely discretionary ... we have repeatedly said that if a plaintiff's federal claims are dismissed before trial, the state law claims should be dismissed as well." (citation modified)).

## CONCLUSION

For the reasons explained in this Memorandum and Order, Plaintiffs' federal claims (Claims One, Two, and Three) are DISMISSED WITH PREJUDICE.  The Court DECLINES TO EXERCISE SUPPLEMENTAL JURISDICTION over and DISMISSES WITHOUT PREJUDICE Plaintiffs' state claims (Claims Four, Five, Six, Seven, and

21

Eight).

The Clerk of Court is respectfully directed to close this case and enter judgment in favor of Defendant on Claims One, Two, and Three.

**So ordered.**

Dated:     March 30, 2026
           Brooklyn, New York
                                        _____
                                        **Kiyo A. Matsumoto**
                                        United States District Judge
                                        Eastern District of New York

22